Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2912 Diamond Street #218
San Francisco, CA 94131
Tel. & Fax: (415) 869-2873

Attorneys for Defendant
JAMIE CARPER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (LOS ANGELES – SPRING STREET)

| | |
|---|---|
| DENIRO MARKETING LLC, | ) Case No.   5:13-cv-00120-TJH(OPx) |
| Plaintiff, | ) **DEFENDANT'S REPLY IN** |
| | ) **SUPPORT OF MOTION TO** |
| v. | ) **DISMISS COMPLAINT** |
| JAMIE CARPER *et al*, | ) **FRCP 12(b)(1), 12(b)(6), 12(b)(5)** |
| Defendants. | ) Date:     April 15, 2013 |
| | ) Time:     Under Submission |
| | ) Courtroom: 17, Spring Street Level |

[caption only]

i

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## I. INTRODUCTION

It is undisputed that Defendant Jamie Carper ("Carper") never threatened to sue Plaintiff Deniro Marketing LLC ("Deniro") under the federal CAN-SPAM Act. Deniro had no basis for a "reasonable apprehension" that Carper would sue it under federal law, nor that it would be liable for any damages even if Carper tried to sue under federal law. Therefore, this Court does not have federal question jurisdiction.

Deniro's first process server signed a false Proof of Service. So did the second process server. And neither Proof of Service was signed under penalty of perjury under the laws of the United States of America.

Carper's attorney Daniel Balsam ("Balsam") and Deniro's attorney Colin Hardacre ("Hardacre") exchanged emails, in the context of the state court action, before Carper filed the instant Motion to Dismiss. Hardacre unequivocally signaled Deniro's determination to litigate this dispute in federal court. This communication satisfies the Meet-and-Confer requirements of Local Rule 7-3; any additional Meet-and-Confer would have been redundant and futile.

This Court should grant Carper's Motion to Dismiss Deniro's Complaint.

## II. DISCUSSION

**A. Carper's Attorney's *Statement* that Deniro Violated Federal Law was *Not a Threat to Sue* Deniro Under Federal Law… And Deniro Knows It**

  *1. Carper Provided Ample Authority that in a Declaratory Relief Action, Federal Question Jurisdiction is Based on the Threatened Action*

In a declaratory judgment action, it is the character of the *threatened action* and not of the defense that determines federal question jurisdiction. *Public Service Commission of Utah v. Wycoff Company Inc.*, 344 U.S. 237, 248 (1952). Here, neither Balsam nor Carper ever threatened to sue Deniro (or anyone else) for violations of the CAN-SPAM Act. Declaration of Daniel Balsam ("Balsam

1

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Decl.") at ¶ 3; Declaration of Jamie Carper ("Jamie Decl.") at ¶ 2. Deniro can point to no evidence to the contrary; in fact, Deniro's Opposition does not even allege that Balsam or Carper ever threatened to sue it for violations of federal law.

Notwithstanding Deniro's lengthy footnote 2 in its Opposition at 11:18-28, Carper stands by his position, well-supported in his Motion, that only the complaint and not the answer determines federal question jurisdiction, even if there is an affirmative defense of federal preemption. In a declaratory relief action, where the parties' true roles are reversed, it is the character of the threatened action that determines federal question jurisdiction. Just because the "true defendant" sues first, declaratory relief actions do not create federal jurisdiction where it was never available in the true dispute.

### 2. *Deniro's Factual History Conveniently Omits the Key Fact that Carper Expressly Referred to $1,000 per Email – the Liquidated Damages Figure Created by California Business & Professions Code § 17529.5*

Setting aside the fact that Colin Hardacre's Declaration in support of Deniro's Opposition is not signed under penalty of perjury of the laws of the United States of America, the statements in Deniro's factual history in its Opposition at 2:27-3:4 are true, but they are *not the whole truth*.

In an email to Deniro's attorney Gary Kaufman ("Kaufman") on September 11, 2012, Balsam *stated* that Deniro violated the federal CAN-SPAM Act by continuing to advertise in unlawful spam that Carper received, but that statement was *not a threat to sue* Deniro under federal law. Balsam Decl. at ¶ 3. As Carper, Deniro, and their attorneys all know full well, individuals like Carper cannot sue for violations of the federal CAN-SPAM Act; only the Federal Trade Commission, state Attorneys General, and Internet access service providers have standing. *See* 15 U.S.C. § 7706.

Deniro conveniently omitted from its Opposition the fact that Balsam sent Kaufman an email[1] on August 7, 2012 – to which Kaufman replied, proving that he received it – in which Balsam *expressly* referred to "the statutory $1,000 per email." Balsam Decl. at ¶ 4 and Ex. A. That figure – $1,000 per email – obviously refers to the liquidated damages provision of California's anti-spam law. *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii). Carper and Balsam did not and *could not* have threatened to sue Deniro under federal law, because violations of the CAN-SPAM Act carry liquidated damages of $250 per email if the state sues a spammer, or $100 or $25 if an Internet access service provider sues a spammer. *See* 15 U.S.C. §§ 7706(f)(3)(A), 7706(g)(3).

### 3. *Deniro's Declaratory Action Fails Even Under Deniro's Claimed Standard, Because Deniro Had No Reasonable Apprehension of Liability Under the CAN-SPAM Act*

Deniro cites to *Societe de Conditionnement v. Hunter Engineering Company Inc.*, 655 F.2d 938, 944 (9th Cir.1981), for the proposition that a plaintiff in a declaratory relief action must have a "reasonable apprehension" that he or she will be subjected to liability. Opposition at 9:12-18. However, under that standard, Deniro is not entitled to declaratory relief because it would have no liability under the federal CAN-SPAM Act if Carper, an individual, actually tried to bring that case. *See Gordon v. Virtumundo Inc.*, 575 F.3d 1040 (9th Cir. 2009) (holding that only Internet access service providers have standing to file a private claim under the CAN-SPAM Act).

So, even if Carper or Balsam mentioned that Deniro's conduct violated the CAN-SPAM Act, that statement was academic rather than an actual threat, since it

---

[1] Balsam submits this email *not* as evidence of settlement communications, but rather that Carper threatened to sue Deniro under *California* law, not federal law.

**3**

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

is undisputed that Carper is *not* an Internet access service provider and therefore lacks standing to file a private claim against Deniro under the CAN-SPAM Act. Therefore, there is no possibility or reasonable apprehension that Deniro would have any liability to Carper under the CAN-SPAM Act, and no basis for a declaratory relief action against Carper under the CAN-SPAM Act.

In fact, it would arguably violate due process to allow Deniro, who advertises in unlawful spam, to sue private individuals for declaratory relief under the CAN-SPAM Act when those private individuals cannot themselves seek relief under the CAN-SPAM Act for Deniro's unlawful spamming.

### 4. *Deniro Has a History of Being Sued for Violations of California But Not Federal Anti-Spam Law, Including Multiple Suits by Carper's Attorney Balsam*

Deniro and its attorneys Kaufman and Hardacre are quite familiar with California's anti-spam law, as Deniro has been sued numerous times for violations of California Business & Professions Code § 17529.5.

Plaintiff Bill Silverstein sued Deniro for violations of *California's* anti-spam law in the matter of *Silverstein v. Deniro Marketing LLC et al*, No. BC382834 (Super. Ct. Cal. Cty. of Los Angeles filed Dec. 21, 2007).

Balsam was co-counsel for plaintiffs when Robert Badella sued Deniro in a putative class action for violations of *California's* anti-spam law in the matter of *Badella v. Deniro Marketing LLC et al*, No. C 10-03908 (CRB) (N.D. Cal. filed Aug. 31, 2010).  Balsam Decl. at ¶ 5.

When Carper and two other plaintiffs sued Deniro and another defendant – Various Inc. – who both own "adult dating websites" in state court, they sued for violations of *California's* anti-spam law.  *Barrett et al v. Various Inc. et al*, No. 113CV240348 (Super. Ct. Cal. Cty. of Santa Clara filed Jan. 28, 2013).

Furthermore, Carper's attorney Balsam has personally sued Deniro four times in small claims court for violations of *California's* anti-spam law, winning all four trials and the three judgments that Deniro appealed. Balsam Decl. at ¶ 6.

Given this history – i.e., that all of these plaintiffs sued Deniro for violations of California law and *not* federal law – Deniro had no basis for a reasonable apprehension that Carper, represented by Balsam, would somehow sue it for violations of the federal CAN-SPAM Act.

### 5. *Carper's Reference to Misrepresented Email Headers and Subject Lines, and the Davison v. Riley Case, Do Not Help Deniro's Plea for Federal Question Jurisdiction*

The CAN-SPAM Act prohibits misrepresented email headers and subject lines, *see* Opposition at 10:6-9, but so does California Business & Professions Code § 17529.5. Deniro stretches the bounds of credulity when it argues that Carper's allegation that the spams contained misrepresented headers and subject lines gave rise to a reasonable apprehension that Carper would sue under federal law, particularly in light of Carper's express reference to $1,000 per email (the amount of liquidated damages California Business & Professions Code § 17529.5), Carper's undisputed lack of standing to sue under the CAN-SPAM Act, and Balsam's history of suing Deniro on his own behalf and on behalf of clients under *California's* anti-spam law and not the federal CAN-SPAM Act.

Deniro's references to the *Davison Design & Development Inc. v. Riley* case in the U.S. District Court for the Northern District of California do not help its position, because that case is in federal court on diversity grounds, not federal question. *Id*. at ¶ 7.

### 6. Poppycock

For all of the above reasons, Deniro's statement that it had "a very real apprehension that it would be sued for violations of federal law," Opposition at

**5**

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

8:16-17 and 10:11-13, is simply poppycock. This Court should not permit Deniro to manufacture an affirmative defense to a claim that Carper never threatened to bring (i.e., violations of the federal CAN-SPAM Act) in order to create federal question jurisdiction when none exists. In any case, Deniro seeks to apply *Societe de Conditionnement*'s "reasonable apprehension of liability" standard, and Deniro had no reasonable apprehension of liability here because Carper has no standing under the federal CAN-SPAM Act.

Regardless, Carper hereby offers a covenant not to sue Deniro under the CAN-SPAM Act. Carper Decl. at ¶ 3.

## B. Carper and Deniro's Attorneys Met and Conferred as to Federal Question Jurisdiction in the Context of the State Court Action, Making any Separate Meet-and-Confer Redundant and Futile

As discussed above, Carper (and others) sued Deniro in the Superior Court of California, County of Santa Clara. On March 4, 2013, Deniro asked Carper for an extension of time to respond to the state court action. In response, Carper stated his position that there is no federal question jurisdiction in this dispute and provided supporting authority. Carper agreed to the extension *if* Deniro would agree to: 1) not remove the state action or try to consolidate it with this Action (which would have delayed litigation in state court), and 2) immediately dismiss this federal Action with prejudice. Deniro rejected Carper's offer. Opposition at 5:14-28; Balsam Decl. at ¶ 8 and Ex. B.

If Deniro had been willing to litigate this dispute in a California court, it presumably would have accepted Carper's terms to give it the extension that it asked for. By rejecting Carper's offer, Deniro signaled its unequivocal intent to litigate this matter in federal court, despite the fact that: 1) Carper never threatened to sue Deniro under federal law, and 2) case law, including the U.S. Supreme Court, is clear that federal question jurisdiction is based on the complaint (or the

6

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

threatened action in a declaratory relief action), and not the answer or affirmative defenses.

Therefore, Carper and Deniro's attorneys *did* Meet-and-Confer on the issue of federal question jurisdiction, and Deniro still insisted on pursuing this matter in federal court. A *separate* Meet-and-Confer on the same topic would have been redundant and futile. However, Carper's attorney Balsam did forget to include the language that "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)" in the Motion, and apologizes for the omission. Carper now corrects the procedural error by adding the required language: "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 4, 2013."

### C. Deniro's Process Servers Continue to Make False Statements on their Proofs of Service, and *Still* Haven't Served Properly Carper with the Summons and Complaint in this Action

#### 1. *Substitute Service Must Take Place at a Person's Usual Home or Business Address; Actual Notice Does Not Cure Defective Service*

California Code of Civil Procedure § 415.20 authorizes substitute service in lieu of personal delivery by leaving a copy of the summons and complaint *at a person's office, residence, usual place of business, or usual mailing address* with a person apparently in charge or member of the household, *informing the recipient of the contents of the documents*, and then mailing a copy of the documents to the person to be served at the same address where the documents were left.

It is well established under California and federal law that actual notice is insufficient if there are defects in service.

> Appellant was under no duty to act upon a defectively served summons. The requirement of notice 'is not satisfied by actual knowledge without notification conforming to the statutory requirements' [citation]; it is long-settled that methods of service are

**7**

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

to be strictly construed and that a court does not acquire jurisdiction where personal service is relied upon but has not in fact taken place. *Kappel v. Bartlett*, 200 Cal. App. 3d 1457, 1466-67 (2d Dist. 1988). *See also Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982).

### *2. Deniro's First Process Server Filed a False Proof of Service*

Deniro's Opposition at 4:9-12 and 13:15-16 is false. No process server came to Carper's parents' home on Edgewood Court in Rancho Cucamonga on January 18, 2013 at 7:20 p.m. Declaration of Shelly Carper ("Shelly Decl.") at ¶ 2. Steve Carper never spoke to any process server on January 18, 2013 at 7:20 p.m., as he was asleep before going to work. Declaration of Steve Carper ("Steve Decl.") at ¶ 2. Even *if* Steve Carper had spoken to a process server at that day/time, which he denies, he would not have said that his son Carper "sometimes stays" at the Rancho Cucamonga address, because that statement would not be true. Carper has his own residence, on Owen Street in Fontana, and he does *not* "sometimes stay" at his parents' home. Steve Decl. at ¶ 3, Shelly Decl. at ¶ 3, Carper Decl. at ¶ 4.

Deniro's Opposition at 4:18-21 and 13:16-18 is also false. Steve *did* speak to a person he now believes to be Deniro's process server Jeffrey G. Dunn Sr. on January 20, 2013 at 12:32 p.m., but Steve did *not* say that Carper was not available for service because Dunn never stated that he was a process server, never explained the nature of the papers, and never stated that he was trying to (substitute) serve Carper. Steve Decl. at ¶ 4.

The follow-up mailing to the Rancho Cucamonga address does not complete substitute service, because – even *if* Carper stayed at his parents' home sometimes, which he does not – Carper's parents' home in Rancho Cucamonga is not his usual place of residence nor his usual mailing address. Carper Decl. at ¶ 5, Steve Decl. at ¶ 5, Shelly Decl. at ¶ 4. And Deniro *knows this*, because Dunn's Proof of

**8**

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Service, on file with this Court, acknowledges that Carper's home address is in Fontana.

Deniro suggests that its process servers have no motivation to lie or obfuscate. Opposition at 14:4-5. This is incorrect; its process servers might be so motivated to appease their client and avoid additional time and effort to properly serve Carper.

### 3. *Deniro's Second Process Server Filed a False Proof of Service Too*

Deniro now claims that its process servers tried to serve Carper again – in Fontana – on March 20, 2013 at 5:15 p.m. The second process server, Stanley Doll, states that he heard people talking in the residence and the television or radio was on; the voices went quiet when he knocked on the door. Opposition at 6:12-19 and 14:10-12.

This is the *second* process server making demonstrably false claims to this Court. Carper was at the gym at that day and time. More specifically, Carper checked in to the gym at 4:56 p.m. on March 20 – as documented by the 24 Hour Fitness Club Visits Report – to begin his workout, which usually lasts for 2.5-3 hours. Carper Decl. at ¶ 6 and Ex. A. Carper was not at home and lives alone, *id*. at ¶ 7, so when he is not home, there are no "voices that would go quiet when someone knocked." Or perhaps the process server was at the wrong house.

Regardless, this Court should disregard the Declarations of Joseph Jones, Jeffrey G. Dunn Sr., and Stanley Doll (all from Bosco Legal Services) in support of Deniro's Opposition, because none of them are signed under penalty of perjury of the laws of the United States of America.

### V. <u>CONCLUSION</u>

Nothing in Deniro's Opposition to Carper's Motion to Dismiss changes anything. Carper could have *alleged* that Deniro violated any number of laws, but he only *threatened to sue* for violations of California Business & Professions Code

9

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

§ 17529.5, as shown by his attorney's explicit reference to $1,000 per spam. Deniro did not have a reasonable belief that Carper would sue under the federal CAN-SPAM Act. Nor did it have a reasonable apprehension of any liability under the CAN-SPAM Act, not least because Carper does not have standing to sue under federal law. Indeed, when Carper *did* sue Deniro, he did so only under California law.

Moreover, Deniro still has not properly served Carper, and actual knowledge is no substitute for formal service.

For the reasons set forth herein, this Court should dismiss the Action with prejudice. Deniro will still have its day in court to litigate the underlying cause of action for violations of California Business & Professions Code § 17529.5, but it should be in the state court action where jurisdiction lies and in which Deniro *has* already been served.

                                              THE LAW OFFICES OF DANIEL BALSAM

Dated: April 1, 2013         /s/ Daniel L. Balsam
                                           Daniel L. Balsam
                                           Attorney for Defendant Jamie Carper

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**